798 F.2d 1415
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
William T. LAWSON, Plaintiff-Appellee,
v.
NORFOLK & WESTERN RY., Defendant-Appellant.
 No. 84-1697.
 United States Court of Appeals,
Sixth Circuit.
 July 28, 1986.
 
 Before MERRITT and JONES, Circuit Judges, and EDWARDS, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 This is a suit for malicious prosecution which resulted in a judgment in favor of Lawson for $16,000 compensatory damages and $200,000 exemplary damages. This appeal resulted.
 
 
 2
 Lawson was charged by two railroad detectives, Grubb and McBride, who worked for Norfolk & Western Railroad, with removing gravel from the track of the Norfolk & Western. These two railroad employees in a routine track inspection noticed that gravel had been removed from under the track for a distance of about 8 to 10 feet and they saw Lawson with a wheelbarrow and shovel sitting near the track with his son. After asking him what he was doing, and receiving the reply that "Any dummy could see what I was doing," the two railroad detectives proceeded to file a complaint with the prosecuting attorney for Washtenaw County who thereupon charged Lawson with tampering with railroad property in violation of M.C.L.A. Sec. 750.511, entitled "Attempt to wreck or endanger safety of passengers." This charge was dismissed at a preliminary hearing when the judge ruled that the prosecution had not established that Lawson had intended to endanger persons.
 
 
 3
 Lawson then brought this action claiming malicious prosecution. One of the elements of this tort is the absence of probable cause for the criminal proceeding. Wilson v. Yono, 65 Mich. App. 441, 443 (1975). The critical case interpreting Michigan law in this area appears to be Koski v. Vohs, 137 Mich. App. 491 (1984). This case contains two statements of Michigan law by which we are bound:
 
 
 4
 In most jurisdictions, the rule is well settled that "the discharge of [an] accused on a preliminary examination by a magistrate" is prima facie, or some evidence of want of probable cause, or supports an inference of want of probable cause.
 
 
 5
 We hold that, in the within case, the dismissal on the merits of the larceny by conversion charge against plaintiff by the district judge at the conclusion of the preliminary examination is evidence of a lack of probable cause to prosecute on the part of defendant Daniel.
 
 
 6
 * * *
 
 
 7
 * * *
 
 
 8
 Where a complainant, at least one who is a non-lawyer, makes a full and fair disclosure to a prosecutor and the prosecutor determines that a crime has been committed, the complainant may justifiably rely on the prosecutor's determination. One panel of this Court has stated that the above rule "is based upon the idea that defendant has not in fact instituted the prosecution," although the case law seems to speak in terms of probable cause. We are inclined to believe that the rule does have applicability to the question of probable cause.
 
 
 9
 Id. at 517-18 (footnotes omitted).
 
 
 10
 Here, the proofs show that the investigation was done in its entirety by Norfolk & Western employees. Thus, the railroad cannot avail itself of the "full and fair disclosure" exception. In addition, since there was some evidence of a lack of probable cause, it was permissible to give the issue to the jury.
 
 
 11
 Plaintiff in this case must prove actual malice on the part of the defendant or its representatives in order to justify exemplary damages. See Donovan v. Guy, 344 Mich. 187, 191-92 (1952). The railroad, in addition to arguing that the proofs do not show malice, also contends that the exemplary damages awarded by the jury were shocking to the conscience and should be struck down on that basis.
 
 
 12
 Our view is that the allowance of exemplary damages is permissible but that the award of $200,000 should be the subject of a remittitur of $125,000 or the grant of a new trial. The behavior on the part of the railroad simply does not rise to the level of egregious conduct needed to sustain such an award. See Bass v. Spitz, 522 F. Supp. 1343 (E.D. Mich. 1981).
 
 
 13
 The other issue presented in this case in that the District Judge awarded prejudgment interest in accordance with M.C.L.A. Sec. 600.6013. This section reads:
 
 
 14
 600.6013 Same; interest on judgment, rate, settlement
 
 
 15
 Sec. 6013. Interest shall be allowed on any money judgment recovered in a civil action, such interest to be calculated from the date of filing the complaint at the rate of 5% per year unless the judgment is rendered on a written instrument having a higher rate of interest in which case interest shall be computed at the rate specified in the instrument if such rate was legal at the time the instrument was executed. In no case shall the rate exceed 7% per year after the date judgment is entered.
 
 
 16
 Under this statute it appears that Michigan law clearly calls for allowance of prejudgment interest. To the extent indicated above, the judgment of the District Court is affirmed.
 
 
 17
 MERRITT, Circuit Judge, concurring.
 
 
 18
 I believe the following additional evidence of the railroad's ill will against the plaintiff should be recited in support of the liability verdict in the court below:
 
 
 19
 Plaintiff-Appellee Lawson was employed by the Appellant as a conductor and brakeman, until his retirement for medical reasons. During his employment, he was an active member, and later officer, of his Transportation Workers' Union local, continuing as Treasurer for some time after his retirement. He has lived on his farm since 1958. The property is split by tracks belonging to Appellant, with seven acres to the north of the tracks and thirty-two acres (partly wooded) to the south. Lawson cuts wood for home heating and cooking on the southern part, and must haul it across the tracks. In January of 1980 the crossing was in disrepair, with insufficient gravel between the ties. This made it difficult for him to move carts and farm equipment across the tracks. Despite repeated requests that the railroad repair the crossing, Lawson was unable to get the work done. He therefore attempted to repair the crossing himself, drawing the ire of agents of the railroad.
 
 
 20
 Aside from the evidence that the charges were dropped on preliminary hearing, Lawson also presented evidence that the railroad bore him ill will as a result of union activities prior to his retirement. That evidence included testimony that he had been forcibly evicted from railroad property while on union business and that the railroad had repeatedly failed to repair the tracks that crossed his property.